# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 20-1352V**

|  |  |
|---|---|
| VERONICA VOGEL, | Chief Special Master Corcoran |
| Petitioner, | Filed: January 21, 2026 |
| v. |  |
| SECRETARY OF HEALTH AND HUMAN SERVICES, |  |
| Respondent. |  |

*Sean Franks Greenwood, The Greenwood Law Firm, Houston, TX, for Petitioner.*

*Benjamin Patrick Warder, U.S. Department of Justice, Washington, DC, for Respondent.*

### FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

On October 9, 2020, Veronica Vogel filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 11, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find Petitioner has not established that she can meet the elements of a Table SIRVA claim.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.      Relevant Procedural History

On March 13, 2023, Respondent filed a Rule 4(c) Report opposing compensation. ECF No. 32 at 4-7. On July 18, 2024, Petitioner filed a motion for a ruling on the record in favor of the claim. Petitioner's Motion for Ruling on the Record ("Mot."), ECF No. 36. Respondent opposed the motion on February 26, 2025, reiterating the arguments set forth in the Rule 4(c) Report. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 37. Petitioner did not file a reply. The matter is ripe for resolution.

## II.     Petitioner's Medical Records

Prior to vaccination Petitioner had a medical history including carpal tunnel syndrome in an "unspecified upper limb," arthritis, and Type 2 diabetes mellitus with diabetic autonomic polyneuropathy. Ex. 4 at 3-4, 8, 10. On October 11, 2017, Petitioner received a flu vaccine in her left arm. Ex. 2 at 1.

There is a subsequent treatment gap of almost six months. On April 2, 2018, Petitioner met with Richard Marietta, M.D., reporting pain and swelling in her right hand and thumb for eight months (which meant before vaccination), and "left arm pain after flu shot 10/2017." Ex. 7 at 6. Dr. Marietta noted that Petitioner had diminished range of motion and limited abduction in her left shoulder. *Id.* at 7. Dr. Marietta suggested that Petitioner see an orthopedist for her "near frozen left shoulder." *Id.* at 8.

On May 17, 2018, Petitioner met with orthopedist Andrew Li-Yung Hing, M.D., for shoulder pain that began "5 months ago after [a] flu shot." Ex. 6 at 29. She also reported "sudden onset of constant episodes of moderate left shoulder pain." *Id.* Petitioner stated that her "[e]pisodes started about 2 months ago." *Id.* She continued that her pain level was a 10/10 and was worse with movement. *Id.* X-rays were unremarkable, and a steroid injection was administered into Petitioner's left shoulder. *Id.* at 32. Dr. Hing diagnosed Petitioner with adhesive capsulitis and recommended physical therapy. *Id.* at 33.

Petitioner attended 26 physical therapy ("PT") sessions between May 31 and October 2018. Ex. 5 at 7-116. The record from the initial PT session notes that Petitioner's "[c]urrent problem(s) began" on November 1, 2017, and that she received a flu vaccine in November, after which she started to have pain and movement issues. *Id.* at 29. During that period Petitioner saw Dr. Hing for an additional follow-up regarding her left shoulder. Ex. 6 at 23.[3]

---

[3] Petitioner also claims that she saw Dr. Hing in September 2018. Ex. 1 at 3. However, there is no record of this encounter.

Petitioner returned to Dr. Hing on October 5, 2018, for a follow up regarding her shoulder pain. Ex. 6 at 19. Dr. Hing noted Petitioner's shoulder pain was "improved" and she had "increased range of motion." *Id.* Petitioner was diagnosed with adhesive capsulitis of the left shoulder and was provided a new prescription for PT. *Id.* at 22.

On February 13, 2019 (after another treatment gap – this time of four-plus months), Petitioner contacted her primary care provider for an unrelated medication refill. Ex. 8 at 7. It was noted Petitioner "completed a course of physical therapy for her left shoulder but still has marketed [sic] limited range of motion." *Id.*

A year later, on February 12, 2020, Petitioner returned to Dr. Marietta for unrelated medication refill. Ex. 8 at 1. It was noted that Petitioner had received her annual flu shot. *Id.* There are no reports of left shoulder pain at this visit. Then, on November 13, 2021 (almost two years since her last visit), Petitioner sought treatment for "left shoulder and upper arm pain after a fall from a bicycle accident." Ex. 9 at 21. Petitioner reported that she was knocked off her bicycle when a vehicle swerved and "she landed on her left arm." *Id.* Petitioner reported having a "previous fracture to the left wrist in August of this year" for which she was "wearing a split." *Id.* Petitioner was diagnosed with a closed fracture of the left proximal humerus. *Id.* at 25.

No further medical records have been filed. Petitioner did, however, submit a signed declaration in support of her Petition. ECF No. 1-2. Petitioner confirms she received a flu vaccine on October 11, 2017, at her employer. *Id.* at 1. She stated that "[i]mmediately after receiving the vaccine, the injection site burned and was very painful." *Id.* at 2. Her arm "became increasingly sore and "grew more intense over the few weeks." *Id.* She continued that "[i]n or around November 2017 or December 2017" she made an appointment with her then PCP, Dr. Pranav Bhakta, because the pain had not subsided and her range of motion had not improved. *Id.* at 2. In 2018 Petitioner sought treatment from a different provider and began treatment with Dr. Marietta. Petitioner then described the events as listed in the medical records. *Id.* Petitioner continued to report that she performed home exercises between October 2018 and October 2020 provided by her physical therapist. *Id.* at 4. To date she continues to suffer difficulties with her daily activities due to her left shoulder pain. *Id.*

## ANALYSIS

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act

Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

> (ii) Pain occurs within the specified time frame;

> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the

---

[4] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

After a review of the entire record, I find that Petitioner cannot meet the SIRVA requirement of preponderantly establishing pain onset within 48 hours of vaccination. 42 C.F.R. § 100.3(a)(XIV)(B).

First, there is inconsistency in the overall record as to the time of onset. Contemporaneous treatment records variously place onset of Petitioner's shoulder pain in either October, November, or December of 2017; *or* January or March 2018. Second, Petitioner's significant initial treatment delay (which in and of itself does not preclude a favorable onset determination) further undermines her subsequent onset reports. Petitioner first reported shoulder pain on April 2, 2018, six months after her vaccination. Ex. 7 at 6. And although she did at that time link her complaints to the vaccination, she next reported shoulder pain to orthopedist Dr. Hing on May 17, 2018, stating that her shoulder pain began "5 months ago after [a] flu shot", putting onset in December 2017. Ex. 6 at 29. She also stated during that visit that episodes of moderate shoulder pain "started about 2 months ago," meaning onset would have been even later. These inconsistencies overall do not weigh in favor of a Table-consistent onset.

Petitioner explains in her affidavit that she reported left shoulder pain several times prior to April 2, 2018. In particular, she claims to have reported shoulder pain to a PCP in

November or December 2017. However, that PCP (Dr. Bhakta) claims to have no record of a visit during this period. ECF No. 28 at 1. Petitioner also claims to have seen Dr. Marietta in January and March 2018 for shoulder pain - but there are no records of these visits either.

Given Petitioner's inconsistent onset reports, I find there is not preponderant evidence that onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

**CONCLUSION**

**Because Petitioner has failed to meet the QAI requirements for a Table SIRVA I must DISMISS her Table claim. However, it remains possible that she may be able to make out a causation-in-fact claim. To that end, the parties shall contact the staff attorney assigned to this matter to schedule a status conference, at which time the contours of such a claim will be discussed.**

**IT IS SO ORDERED.**

**<u>s/Brian H. Corcoran</u>**
Brian H. Corcoran
Chief Special Master
